United States District Court
Southern District Of Florida
West Palm Beach Division

FILED BY _____ PCS _____ D.C.

AUG 26 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

United States of America)
                    Respondent  ) Case No: 9:18-CR-80076-012
                                 ) USM No: 17483-104
V.                               )
                                 )
Nevious Jackson               )
          Movant                 )

## Motion For Reconsideration

Comes Now, Movant, Nevious Jackson, Pro Se and files this Motion For Reconsideration in the Honorable Court. Movant requests that this Court reconsider its recent Order denying him Compassionate Release under 18 U.S.C § 3582 (c)(1)(A)(i). Movant is a layman of the law, unskilled in the law, and therefore he humbly asks that this reconsideration motion be construed liberally. Haines V. Kerner, 404 U.S. 519.520 (1972).

## Procedural BackGround

Movant recently filed a Motion For Compassionate Release due to Extraordinary and Compelling Circumstances Pursuant to 18 U.S.C § 3582 (c)(1)(A)(i). In that Motion

Page 1 of 18

Movant requested Compassionate Release because he is at risk and highly susceptible to the Covid-19 virus, the BOP is not adequately equipped or prepared to safely and effectively manage the Covid-19 pandemic, and Movant's rehabilitation progress. The Government opposed granting Movant relief and this Honorable Court denied Movant's motion without prejudice. The Court concluded that 1.) Movant did not provide enough evidence about how Covid-19 could affect his medical conditions. 2.) Movant did not provide enough evidence to show that the medical department is inadequate to care for him. 3.) Movant did not exhaust all Administrative remedies before seeking relief in court. 4.) Movant has a long criminal history, with prior violent charges. 5.) Movant received a sentence reduction Rule 35. Movant believes this Court's conclusions were made in error and he now moves this Honorable Court to reconsider his Compassiona. Release Motion. In support thereof, Movant states as follows:

## ARGUMENT

I. Movant's Long-term, Pre-existing medical conditions Are considered risk factors for Severe Corona Virus illness. Movant suffers from long-term, pre-existing medical conditions that are considered extreme risk factors that make him highly susceptible

to severe Covid-19 and coronavirus illness. Movant suffers from Asthma, Hypertension and High Cholesterol. Movant is a Chronic Care Patient. (See Exhibit 1 Bureau of Prisons Health Services Clinical Encounter Based on the clinical expertise of the CDC guidelines he has seriously underlying medical conditions that make him a higher risk for severe illness from Covid-19. (See Centers for Disease control and prevention, Covid-19 guidelines, http://www.cdc.gov/coronavirus.html).

Although the risk of coronavirus to incarcerated seniors is high many younger inmates like Movant suffer from long-term, pre-existing medical conditions that render them vulnerable to Covid-19. While Movant is only 43 years old, age is only one risk factor to consider when calculating an individual susceptibility to the virus. It has been reported that people ranging in ages from 18 to 44 have accounted for 46 percent of positive tests and that, across the United States, 38% of those hospitalized are between the ages of 20 and 54, while 12% of the intensive care patients are between the ages of 20 and 44. (See New York Times, Covid-19 age article; https://www.nytimes.com/2020/03/23/NYregion/NYC-coronavirus-young.html). This data is of particular concern for inmates, since prisoners physiological age averages 10 to 15 years older then their chronological age. (See American Journal of Public Health, Aging in

Correctional Custody https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3464842 ). Even without the age risk factor, Movant is at-risk to Covid-19. Movant suffers from moderate-to-severe Asthma, which qualified as a chronic lung disease under CDC guidelines. Genetic and molecular studies have investigated lung changes in response to Covid-19. These studies have revealed startling details about damage from the infection. The coronavirus that causes Covid-19 invades the lining of blood vessels, a tissue called endothelium, promotes blood clots, cause the blood vessels in the lungs to split and chokes off the lungs blood supply. For patients who have chronic lung disease like Asthma, these blood clots can become life threatening.(See webMD, coronavirus update https://webmd.com ). If Movant was to catch the Covid-19 virus, he would be required to be placed on a mechanical ventilation, which can injure the lungs. Movant is currently on a steroid inhaler called Albuterol to manage his Asthma, but this medication will become ineffective if he catches Covid-19. Movant also suffers from Hypertension and High Cholesterol which both qualify as coronary artery disease under CDC guidelines. The blood clots in Covid-19 patients put them at higher risk for problems like heart attacks and strokes. The clots can become lethal because they severely compromise

blood flow not only in the lungs, but also in other organs such as the brain and heart. (See New England Journal of Medicine, Angiogenesis Foundation Covid-19 study https://www.angio.org). The virus also targets the heart muscle itself, causing a medical condition called Mycocarditis, or inflamation of the heart muscle. Mycocarditis can affect the heart muscle and its electrical system, which reduces the heart's ability to pump blood throughout the body. When Mycocarditis is combined with hypertension and High Cholesterol, the results can be deadly due to the strain already placed upon the heart. If Movant was to catch ~~Carona~~ Covid-19 virus, he would be placed on a nonsteroidal anti-inflamitory drug (N.S.A.I.D.), like Advil or Ibuprofen. This N.S.A.I.D must be taken in tandum with Acetaminophen. When both of these drugs are taken together, it decreases the effect of Hypertension and Cholesterol medication, which can cause a heart attack or stroke and death. Movant is currently on Hypertension medication called HydroChlorothiazide and High Cholesterol medication called Atorvastatin, but these medications will become ineffective if he catches Covid-19. Therefore, it is clear that, despite Movant's age, he is at-risk to Covid-19 due to his long term, pre-existing medical conditions. Movant has no medical training, but he has provided more

than enough evidence about how Covid 19 can affect someone with his medical conditions. It is also clear Movant meets the CDC guidelines at-risk categories for those that are highly susceptible to Covid 19 virus. (See Exhibit 2 and Exhibit 3. Exhibit 2 several Doctors stress in a letter to President Trump the transmits of Covid-19 and the medically vulnerable population.(See www.heathaffairs.org/do/10.1377/hblog 20200324.78502/full/). (See www.themarshallproject.org. 2020/03/19/this-chart-shows-why-the-prison-population-is-so-vulnerable-to-covid-19). Being at home would present a lower risk of Movant contracting Covid-19 than staying in prison, as the facility he is incarcerated in is a "breeding ground" for the uncontrollable transmission of Covid-19.

II. The Medical Department at FCI Coleman is inadequate to prevent him from contracting Covid-19 and caring for him if he contracts Covid-19. The prison Movant is incarcerated in has implemented a quarantine lockdown as a measure to mitigate expose to Covid-19 virus. Every department at the facility has been closed, including the Medical Department, since March 2020. (See Exhibit 4). Please see, www.cbsnews.com/news/coronavirus-prison-federal-employees-say-conflicting-orders-putting-lives-at-risk-2020-03-19/. Health experts across the country, including leading

leading physician Dr. Anthony Fauci have stated that facilities, like movant's, contain high concentrations of people in close proximity and are "breeding grounds" for the Covid-19 virus. The conditions in federal prisons present a significant health risk to those housed in them. The Covid-19 pandemic requires a strategic response based on the conditions that exist and the interventions that effectively limit transmission. It is impossible for movant to socially distance himself in prison, as he is surrounded by other inmates in a poorly-ventilated cell and he is required to share a toilet and sink. Every several days movant has no choice but to share a shower that is used by hundreds of individuals, and his clothes and bedsheets are washed infrequently. Federal prisons are tinderboxes that are ready to explode and endanger our entire country. There has been an extraordinary high transmission of Covid-19 at Coleman FCI. Originally, the SHU at Coleman Medium was used to quarantine inmates who contracted the virus. The virus is spreading rapidly here, like a wildfire that two entire units, Unit A1 and A2 have been converted into quarantine units. Inmates that are sick is being placed two to a cell. The outbreak of Covid-19 at movant's facility has been so severe that there is a shortage of staff, due to the threat the officers themselves face. Over 150 inmates and 16 staff members have already

contracted Covid-19 at Coleman Medium. In the BOP alone there is over 10,000 inmates, 1000 staff member with Covid-19 and over a 100 inmates has died from Covid-19.(See Andrea Circle Bear case. "Its an outrage that Andrea Circle Bear, a near full-term pregnant woman with "underlying medical conditions", lost her life while in federal custody." Congressman Jerrold Nadler (D-New York), chairman of the House Judiciary Committee, told Reuters. We have a moral and constitutional duty to prevent additional deaths among those who are detained or imprisoned." Andrea Circle Bear was 30 years old and died April 28, 2020. It is people ~~all ages~~ of all ages with "underlying medical conditions," who is suffering "severe illness" and "death." Covid-19 doesn't pick age and color. People is dying and the youngest to die from Covid 19 is 5 years old. Movant, nor his cellmate has been tested for Covid-19. Only inmates that is showing symptoms and carried out on a stretcher is tested for Covid-19. (See www.vice.com/en_ca/ article/jge4vg/sick-staff-inmate-transfers-and-no-tests-how-the-us-is-failing-federal-inmates-as-coronavirus-hits). The Medical treatment capacity is not the same level in a correctional setting as it is in a hospital. Many patients with Covid-19 descend suddenly and rapidly into respiratory distress. If

Movant descend into respiratory distress, he would have no way to seek medical attention. The prison is short of staff and officers only come around during the day to pass out meals. Several hours could elapse before Movant receive any help. The Medical Department is not a 24 hours care facility at Coleman Medium and this is suppose to be a "Care Level 3" Medical institution. (See the reports on Coleman C.I. Medical with the New York Times and other reports. FCI Coleman Medium "treatment" plan is to quarantine every inmate that contract Covid-19 and not test the whole inmate pupolation and staff. There is no plan in place to "prevent" Movant from contracting Covid-19. Tempature check isn't a prevention, when some inmates and staff is "asymptomatic," spread Covid-19. Therefore, Movant has demonstrated that Coleman FCI Medium and it's medical department are inadequate to prevent him from contracting Covid-19, as the virus is already inside the prison, both inmates and staff have contracted the virus. With Movant's medical conditions, he has also demonstrated that Coleman FCI Medium and it's medical department is inadequate to care for him if he contracts Covid-19, as he will be required to be hospitalized. The only way to prevent Movant from contracting Covid-19, and possibly dying because of medical conditions, would

be to allow him to socially distance himself at home.
FCI Coleman, Regional office and Central Offices
has refused to take the proper steps to ensure
movant does not contract the Covid-19 virus; so he
now requests Compassionate Release from this
Honorable Court.

III. Movant's Criminal History and Rehabilitation
The Government noted movant criminal history and
prior violent charges. Movant states that he has been
rehabilitated and that it is never too late to learn
something. The past is unalterable in any even and
the future is the only thing that he can change.
Learning the lessons of the past is the only way to
shape the present and the future. Movant's has
greatly matured, is not a danger to society and just
want to live free. Movant current charge is simply a
drug charge. Movant has accepted responsibility for
his actions and has been striving to become a better
member of his community. Movant has a flawless
institutional disciplinary record and is now a mentor
to other inmates in the Skill Program.
(A.) Dr. Benitez, PhD, the skill program administrator
has even stated that movant "is a good role model
to other inmates and implements the philosophy
and mentodology of the program on a daily basis.
                    Page 10 of 18

Movant is respected by both staff and other inmates due to his pro-social values and respectful manner... Movant has been an asset to the Skill Program. He helps de-escalate situations between inmates that if not addressed could result in serious matters. Movant has been dependable, compassionate and works well independently and/or as part of a team. (See administrative Note, Exhibit 5). Movant is a changed man and he has been successfully rehabilitated. Movant has been caring for other people, he has found Christ, and he has gotten control of his drug addiction. Facilitator (P) Mantra, L. MA/DTS. Inmate Jackson attends group sessions consistently and his participation is adequate. (See Exhibit 6 program statement and certificates. Movant has a large support network and has maintained a close relationship with his family. Movant even has job opportunities waiting for him once he is released from prison. Under Pepper v. United States, 562 U.S. 476, 490-93 (2011), this Honorable Court must consider post-offense developments and rehabilitation progress pursuant to the § 3553(a) factors. This will provide the most up to date picture of Movant's history and characteristics. Id. It will also shed light on the likehood of whether Movant will engage in future criminal conduct. Id. Therefore, Movant has demonstrated that he has not

engaged in violence over 15 years, his current offense is non-violent, he has been rehabilitated, and he is not a threat to the community. Considering all the § 3553(a) factors, including Movant's medical conditions, the Covid-19 emergency and his rehabilitation efforts, Movant requests this Honorable Court grant him Compassionate Release.

IV. Movant Exhausted Administrative Remedies.

On May 1, 2020 Movant request a reduction in sentence for Compassionate Release, this was denied May 4, 2020 by C.M. Rijos, Acting Warden. On May 12 and 20, 2020 I appealed with a (BP9) to the denial and on May 28, 2020 J.M. Hengen, Warden denied my (BP9). On June 12, 2020 I sent a (BP10) to the Regional Director, this lapse the 30 day period and I have yet to receive a response. On July 19, 2020 I sent a (BP11) to Central Office to the General Counsel, this lapse the 30 days period with no response. (See Exhibit 7 on administrative remedies). Movant has exhausted all Administrative remedies. Movant pray's this Honorable see this pandemic Covid-19 as "Extraordinary and Compelling Circumstances Pursuant to 18 U.S.C § 3582 (c)(1)(A)(i) and do not delay to grant Compassionate Release. Movant health and life is in grave danger.

Moreover, the delay from permitting unnecessary delay in this context can be deadly. The case of Andre Williams is particularly tragic. A 78 years old inmate at FCI Butner was granted compassionate release by the Northern District of Florida on April 1, 2020 in an opinion based in part on his age and poor health, which put him at significant risk for even more severe and life threatening illness, should he be exposed to Covid-19 while incarcerated. See United States v. Williams, No. 3:04-CR-00095-MCR-CJK, ECF 91 (N.D. Fl. April 1, 2020) However, the order of release was stayed ~~with the~~ while Mr. Williams release plan was approved. According to the BOP's press release, Mr. Williams contracted Covid-19 in custody days later, passed away from Covid-19 before being sent home.) See https://www.bop.gov/resources/news/pdfs/20200413_2_press_release_butner.pdf. In light of its text, history, and governing precedent, the Court should construe the rule requiring either exhaustion or the lapse of 30 days in light of its congressional purpose to ensure meaningful judicial review of compassionate release requests. Courts should be permitted to excuse full compliance with the rules provisions when exigent circumstances demand and when the entirety of the circumstances establish that adhering

to the rule will hinder judical review at grave risk
to incarcerated defendants.

## V. Home Confinement Under The Cares Act of 2020

Under title 18 U.S.C. § 3582 (c), a Court may not modify
a term of imprisonment once it has been imposed except
in very limited circumstances. Id. Movant believe that
his medical conditions, the Covid-19 virus, and his
rehabilitation progress authorizes this Honorable
Court to modify and reduce his sentence. However, if
this Court decide not to modify his sentence, Movant
asks this Court to RECOMMEND a change in his
place of incarceration where he can serve the
remainder of sentence, per the Cares Act, a federal
law. On March 27, 2020, Congress passed the Cares
Act, which grants the statutory authority to the BOP
to place Movant on Home Confinement for the remainder
of his sentence. If Covid-19 emergency conditions
materially affect the functioning of a prison, the BOP
may lengthen the maximum amount of time for which
Movant can be placed on Home Confinement. (See title
18 U.S.C. § 3624 (c)(2). The Cares Act compliments the
First Step Act, which made clear that Congress intends
for low risk, non-violent prisoners to spend as
much time as possible on Home Confinement.
The FSA directs the BOP to place all low risk, non

violent prisoners, to the extent practicable, on Home Confinement for the maximum amount of time permitted by law. Under the Cares Act, Movant can now be placed on Home Confinement. The Attorney General and Inspector General have noted in reports and public statements that the BOP is under utilizing various programs that are available, such as halfway houses and home confinement placement, and that even such deserving inmates such as Movant are frequently denied. Movant's prison has refused to follow Congress and the DOJ's directions to place inmates on Home Confinement placement. Prison overcrowding at FCI Coleman Medium has resulted over 150 inmates and 16 staff contracted Covid-19. The DOJ stated that the BOP is working to identify vulnerable prisoners who would make more sense to allow them to go home to finish their confinement. The Attorney General also instructed the BOP to prioritize the use of its statutory authorities to grant home confinement for inmates who are at-risk to Covid-19. Some of the criteria the BOP considers when assessing a prisoner's eligibility for Home Confinement includes: Any statements made by the Court concerning the purpose that warranted a sentence to imprisonment and recommending the type of Correctional facility that would be appropriate. (See 18 U.S.C. § 3621 (6)(4)(A), (B). The

Page 15 of 18

BOP has the authority to send Movant to community corrections Home Confinement program and designate his home as the place of Confinement. This Court has the authority to issue a NON-binding recommendation to the BOP if it considers such a request reasonable based on Movant's current circumstances. A recommendation that Movant be placed on home confinement, because he suffers from long-term, pre-existing medical conditions that are severe risk factors for corona virus illness, would be NON-binding on the BOP. This recommendation would provide guidance for the BOP to review Movants circumstances, and considering the fact that FCI Coleman Medium has refused to follow the Cares Acts. This recommendation would also maintain the integrity of the disposition of Movant's case, while still preserving the punitive aspect of his sentence since it would not modify this Honorable Court's judgement. Movant would remain under the auspices of the BOP and the Probation Office, while in the supervised environment of a community correction of home confinement as the law allows. Therefore, if this Honorable Court decide not to grant Movant Compassionate Release, he requests a recommendation that he be placed on Home Confinement under the Cares Act, because he suffers from

long-term, pre-existing conditions that make him
susceptible to severe Covid-19 illness. (See U.S.S.G §
1B1.13, App. N. 4). There is no vaccine for Covid-19.
It is rapidly spreading here at FCI Coleman
Medium and throughout the BOP. (See https://www.
bop.gov/coronavirus.

## Conclusion

Wherefore, Movant requests that this Honorable
Court reconsider his motion for Compassionate Release.
In the alternative movant requests a recommend-
ation that the BOP place him on Home Confinement.
As stated supra realistic social distancing is an
impossible in prison because inmates sleep on top
of each other and if one contract Covid-19, it's
likely they'll all catch it. Movant humbly prays
that this court grants him the relief sought
for the circumstances are extremely "Extraordinary"
and "Compelling"

Certificate Of Service

I, Previous Jackson, Hereby Declare, under the penalties of perjury (28 U.S.C. §1746.) that a true and correct copy of the foregoing "Motion for Compassionate Release for Extraordinary and Compelling Circumstances" has been sent via U.S. Postal Service on this 20th ____ day of August ____, 2020 to the following address listed below:

United States District Court
Southern District of Florida
Office of the Clerk
700 Clematis St. Room. 202
West Palm Beach, Fla. 33401

Previous Jackson
Oath: Affirmation
Previous Jackson, Pro se
Reg. 17483-104
FCI Coleman Medium
P.O. Box 1032
Coleman, Fla. 33521

Page 18 of 18

*Exhibit 2*

# Bureau of Prisons
## Health Services
### Health Problems

Reg #:  17483-104                     Inmate Name:  JACKSON, KEVIOUS

| Description | Axis | Code Type | Code | Diag. Date |
|---|---|---|---|---|

## Current

**Unspecified mycosis**
11/13/2018 14:30 EST  Cesar, Tericka ARNP · · · · · · · · · · · · · ICD-10 · · · · B49 · · · 11/13/2018

**Hyperlipidemia, unspecified**
11/06/2018 17:55 EST  Pangilinan, P. MLP · · · · · · · · · · · · · ICD-10 · · · · E785 · · · 11/06/2018
    hx Hyperlipidemia since  2011

**Essential (primary) hypertension**
11/06/2018 17:55 EST  Pangilinan, P. MLP · · · · · · · · · · · · · ICD-10 · · · · I10 · · · 11/06/2018
    hx Hypertension since 2004

**Asthma**
11/06/2018 17:55 EST  Pangilinan, P. MLP · · · · · · · · · · · · · ICD-10 · · · · J45909 · · · 11/06/2018
    hx Asthma since 1977

**Gastro-esophageal reflux disease without esophagitis**
11/06/2018 17:55 EST  Pangilinan, P. MLP · · · · · · · · · · · · · ICD-10 · · · · K219 · · · 11/06/2018
    hx GERD , 2003

**Unspecified abdominal hernia**
11/13/2018 17:04 EST  Cesar, Tericka ARNP · · · · · · · · · · · · · ICD-10 · · · · K469 · · · 11/13/2018

**Constipation, unspecified**
12/28/2018 13:01 EST  Li, Richard MD · · · · · · · · · · · · · ICD-10 · · · · K5900 · · · 12/28/2018

**Pain in leg, unspecified**
12/28/2018 13:06 EST  Li, Richard MD · · · · · · · · · · · · · ICD-10 · · · · M79606 · · · 12/28/2018

**Unsp symptoms and signs involving the genitourinary system**
03/22/2019 14:19 EST  Miranda, Jeannette FNP-BC · · · · · · · · · · · · · ICD-10 · · · · R399 · · · 03/22/2019

**Encounter for observation for other suspected diseases and conditions ruled out**
03/22/2019 14:22 EST  Miranda, Jeannette FNP-BC · · · · · · · · · · · · · ICD-10 · · · · Z0389 · · · 03/22/2019

**Body mass index (BMI) 28.0-28.9, adult**
11/06/2018 17:55 EST  Pangilinan, P. MLP · · · · · · · · · · · · · ICD-10 · · · · Z6828 · · · 11/06/2018
    BMI= 28.8  (overweight)  11/6/2018

Generated 05/29/2020 10:12 by Hayes, D. HIT                     Bureau of Prisons - COM

Reg #:  17483-104     Inmate Name:  JACKSON, KEVIOUS

| Description | Axis | Code Type | Code | Diag. Da |
|---|---|---|---|---|

## Resolved

**Bell's palsy**

| | Axis | Code Type | Code | Diag. Da |
|---|---|---|---|---|
| 08/29/2019 12:56 EST  Li, Richard MD | | ICD-10 | G510 | 07/25/20 |
| 07/25/2019 15:41 EST  Li, Richard MD | | ICD-10 | G510 | 07/25/20 |

**Ventral hernia**

| | Axis | Code Type | Code | Diag. Da |
|---|---|---|---|---|
| 04/03/2020 10:07 EST  Li, Richard MD | | ICD-10 | K439 | 06/24/20 |
|    Surgery is pending | | | | |
| 01/30/2020 14:35 EST  Pappas, James FNP-C, CCHP | | ICD-10 | K439 | 06/24/201 |
|    Surgery is pending | | | | |
| 06/24/2019 09:09 EST  Miranda, Jeannette FNP-BC | | ICD-10 | K439 | 06/24/201 |

**Total:** 13

*Exhibit 1*

# Bureau of Prisons
# Health Services
# Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | JACKSON, KEVIOUS | | | Reg #: | 17483-104 |
| Date of Birth: | 08/08/1977 | Sex: M | Race: BLACK | Facility: | COM |
| Note Date: | 10/07/2019 11:00 | Provider: | Li, Richard MD | Unit: | B08 |

Review Note - Consultation Report Review encounter performed at Health Services.
**Administrative Notes:**

    **ADMINISTRATIVE NOTE   1**    **Provider:** Li, Richard MD

        pt was seen by surgeon who recommended laparoscopic repair of ventral hernia

**New Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| General Surgery | 10/16/2019 | 10/16/2019 | Routine | No | |

    **Subtype:**
        Hernia, Surgery
    **Reason for Request:**
        pt was seen by surgeon who recommended laparoscopic repair of ventral hernia

**Copay Required:** No        **Cosign Required:** No
**Telephone/Verbal Order:** No

Completed by Li, Richard MD on 10/07/2019 11:01

*Exhibit 1*

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | | |
|---|---|---|---|---|
| Inmate Name: | JACKSON, KEVIOUS | | Reg #: | 17483-104 |
| Date of Birth: | 08/08/1977 | Sex: M   Race: BLACK | Facility: | COM |
| Encounter Date: | 08/29/2019 12:43 | Provider: Li, Richard MD | Unit: | B08 |

Chronic Care - Chronic Care Clinic encounter performed at Health Services.

**SUBJECTIVE:**

**COMPLAINT 1**   **Provider:** Li, Richard MD

**Chief Complaint:** No Complaint(s)

**Subjective:** has a ventral hernia, causing pain. surgeon recommended surgery.
developed Bell's palsy, which completely resolved.
has HTN since he was 27 yo. says he takes BP meds, HCTZ 25 mg, BP normal.
has asthma, mild intermittent. smoked 1 cigar a day. wheezing with exercise. no wheezing at night.
cholesterol elevated. 10 yr risk of CHD 16 %.

**Pain:** No

**Seen for clinic(s):** Gastrointestinal, Hypertension, Pulmonary/Respiratory

**ROS:**

**Cardiovascular**

**General**

*Exhibit 1*

No: Angina, Exertional dyspnea

**Psychiatric**

**General**

No: Mood Impaired, Mood-Down, Anxious

**OBJECTIVE:**
**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 08/27/2019 | 11:06 COX | 98.1 | 36.7 | | Criswell, Linda PA-C |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 08/29/2019 | 12:49 COX | 76 | | | Li, Richard MD |
| 08/27/2019 | 11:06 COX | 68 | | | Criswell, Linda PA-C |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 08/27/2019 | 11:06 COX | 12 | Criswell, Linda PA-C |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 08/29/2019 | 12:49 COX | 134/74 | | | | Li, Richard MD |
| 08/27/2019 | 11:06 COX | 143/84 | | | | Criswell, Linda PA-C |

**Wright Peak Flow:**

| Date | Time | Attempt 1 | Attempt 2 | Attempt 3 | Effort | Bronchodilator | Provider |
|---|---|---|---|---|---|---|---|
| 08/29/2019 | 12:53 COX | 550 | 550 | 550 | | Without | Li, Richard MD |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|

| Inmate Name: | JACKSON, KEVIOUS | | | Reg #: | 17483-104 |
| Date of Birth: | 08/08/1977 | Sex: | M   Race:  BLACK | Facility: | COM |
| Encounter Date: | 08/29/2019 12:43 | Provider: | Li, Richard MD | Unit: | B08 |

| **Date** | **Time** | **Value(%)** | **Air** | | **Provider** |
|---|---|---|---|---|---|
| 08/27/2019 | 11:06 COX | 99 | | | Criswell, Linda PA-C |

**Weight:**

| **Date** | **Time** | **Lbs** | **Kg** | **Waist Circum.** | **Provider** |
|---|---|---|---|---|---|
| 08/29/2019 | 12:49 COX | 228.0 | 103.4 | | Li, Richard MD |

**Exam:**
**General**
    **Appearance**
        Yes: Appears Well, Alert and Oriented x 3
        No: Appears Distressed
  **Head**
    **General**
        Yes: Atraumatic/Normocephalic
  **Eyes**
    **General**
        Yes: PERRLA, Extraocular Movements Intact
    **Fundus Exam**
        Yes: Grossly Normal Retina
  **Neck**
    **General**
        Yes: Supple
        No: Lymphadenopathy
  **Pulmonary**
    **Auscultation**
        Yes: Clear to Auscultation
  **Cardiovascular**
    **Auscultation**
        Yes: Regular Rate and Rhythm (RRR), Normal S1 and S2
        No: M/R/G
  **Abdomen**
    **Palpation**
        Yes: Soft, Tenderness on Palpation, Midline Tenderness
        No: Guarding, Rigidity
  **Musculoskeletal**
    **Ankle/Foot/Toes**
        No: Edema
  **Neurologic**
    **Cranial Nerves (CN)**
        Yes: Within Normal Limits
    **Motor System-Strength**
        No: Weakness
  **Mental Health**
    **Affect**
        Yes: Appropriate
        No: Anxious, Depression, Sad

*Exhibit 1*

| Inmate Name: | JACKSON, KEVIOUS | | | | Reg #: | 17483-104 |
| Date of Birth: | 08/08/1977 | | Sex: | M   Race:  BLACK | Facility: | COM |
| Encounter Date: | 08/29/2019 12:43 | | Provider: | Li, Richard MD | Unit: | B08 |

## Exam:

### ROS Comments

-exercise x  1 hr a day, 5 days
-cmp normal
-a1c 6.1 H, pt is asked to lose wt

*Exhibit 1*

## ASSESSMENT:

Asthma, J45909 - Current

Bell's palsy, G510 - Resolved

Essential (primary) hypertension, I10 - Current

Hyperlipidemia, unspecified, E785 - Current

Ventral hernia, K439 - Current

## PLAN:

### Renew Medication Orders:

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| 950939-COX | Atorvastatin 40 MG TAB | 08/29/2019 12:43 | Take one tablet (40 MG) by mouth every night at bedtime x 363 day(s) |
| | **Indication:** Bell's palsy | | |
| 950940-COX | hydroCHLOROthiazide 25 MG Tab | 08/29/2019 12:43 | Take one tablet (25 MG) by mouth each morning x 365 day(s) |
| | **Indication:** Essential (primary) hypertension | | |
| 945237-COX | raNITidine HCl 150 MG TAB | 08/29/2019 12:43 | Take one tablet (150 MG) by mouth twice daily 30 minutes before meals "Chronic Care Verified" (with objective findings) x 180 day(s) |
| | **Indication:** Gastro-esophageal reflux disease without esophagitis | | |
| 912600-COX | Albuterol Inhaler HFA (8.5 GM) 90 MCG/ACT | 08/29/2019 12:43 | Don't use daily. Inhale 2 puffs by mouth 4 times a day as needed to prevent/relieve asthma attack (inhaler to last 90 days. If need more, make sick call) "Empty container is to be returned for refill" PRN x 365 day(s) |
| | **Indication:** Asthma | | |
| 150187-MIM | Calcium Polycarbophil 625 MG Tab | 08/29/2019 12:43 | Take one tablet (625 MG) by mouth each day Take with a glassful of water *Please purchase from commissary when these are gone if needed* x 180 day(s) |
| | **Indication:** Gastro-esophageal reflux disease without esophagitis | | |

### New Laboratory Requests:

| Details | Frequency | Due Date | Priority |
|---|---|---|---|
| Chronic Care Clinics-Diabetic-CBC | One Time | 02/28/2020 00:00 | Routine |
| Chronic Care Clinics-Diabetic-Lipid Profile | | | |
| Chronic Care Clinics-Diabetic-Hemoglobin A1C | | | |

*Exhibit 2*

March 27, 2020

Dear President Trump,

As Americans are engaging in social distancing to limit the spread of COVID-19, we, as public health experts and concerned citizens, write to urge you to use your discretion to allow for the same to occur in federal prisons and immigration detention centers. These facilities contain high concentrations of people in close proximity and are breeding grounds for the uncontrolled transmission of SARS-CoV-2, the virus that causes COVID-19. The conditions in federal prisons and immigration detention centers present significant health risks to the people housed in them, the correctional officers, health care professionals, and others who work in them, and to the community as a whole.

The COVID-19 pandemic requires a strategic response based on the conditions we know to exist and the interventions we know to effectively limit transmission. We know that the COVID-19 virus transmits rapidly in densely populated spaces, which is why the CDC recommends that people keep at least six feet away from each other and avoid gatherings of more than ten people. Responding to the virus also requires an ability to keep sick people from well people and to treat those who have been exposed without endangering others.

This has been difficult to accomplish in our society generally, but is impossible to achieve in our federal prisons and immigration facilities as things currently stand. More than 221,000 people are incarcerated in federal prisons and 50,000 adults and children in immigrant detention centers. These people are housed cheek-by-jowl, in tightly-packed and poorly-ventilated dormitories; they share toilets, showers, and sinks; they wash their bedsheets and clothes infrequently; and often lack access to basic personal hygiene items. These facilities lack the ability to separate sick people from well people and to quarantine those who have been exposed. They are tinderboxes, ready to explode and endanger our entire country. Adequate medical care is hard to provide, even without COVID-19.

Concern over the people detained in these facilities should be sufficient to spur you to action, but they are not nearly the only people who stand to suffer if conditions are not changed: it is likely that an outbreak in a prison or detention center will spread beyond that facility. Through "jail churn" staff, correctional officers, judges, doctors, and visitors will all be exposed to COVID-19 in these facilities and will carry and spread it in the community at large. Facilities face the same risks as cruise ships and nursing homes when dealing with COVID-19.

First, we ask that you commute sentences for **all elderly people.** While the SARS-CoV-2 virus infects people of all ages, the World Health Organization (WHO) is clear that older people are at a higher risk of getting severe COVID-19 disease and dying. In fact, the risk of severe disease gradually increases with age starting from around 40 years. Also, older people who are released from prison pose little risk to public safety.

Second, we are also asking that you commute sentences for the **medically vulnerable population** including persons suffering from cardiovascular disease, diabetes, chronic

*Page 1 of 6*

*Exhibit 2*

respiratory disease, or cancer. In addition to older people, WHO has identified persons with these underlying medical conditions to be at greater risk for contracting severe COVID-19. While there is little known yet about the effects of COVID-19 on pregnant women, the CDC explains that with viruses from the same family as COVID-19, and other viral respiratory infections such as influenza, pregnant women have had a higher risk of developing severe illness.

Third, we are asking that you commute sentences for **all persons who have one year or less remaining on their sentence**. This measure will limit overcrowding that can lead to further spread of COVID-19 and free up beds that will be needed to care for the sick who should be housed separate from others.

Fourth, **release all persons, adults and children, detained in an immigration facility**. This includes using discretionary power to release all immigration detainees on parole, or using alternatives to detention methods. Detained adults and children have been held for days, weeks, or even months in cramped cells, sometimes with no access to soap, toothpaste, or places to wash their hands or shower. These conditions have led to outbreaks of other contagious diseases such as flu, lice, chicken pox, and scabies and are ripe for an outbreak of COVID-19. U.S. border policies create further risk. Immigrants who have been forced to stay in makeshift camps in Mexico due to the administration's Remain in Mexico policy are also facing health risks from living in overcrowded conditions without adequate hygiene or health care making them susceptible to outbreaks of contagious diseases.

**Lastly, suspend new detentions of suspected non-citizens**. Increased interior enforcement by ICE, including violent raids and arrests, has presented unique risks of COVID-19 for immigrant communities. Immigrant families may avoid going to the hospital or seeking necessary medical attention out of fear of detection by ICE. Immigrants may also decline to self quarantine out of fear that ICE will find them and arrest them in their own home. Interior enforcement has continued to increase even during the COVID-19 pandemic.

Respectfully,

*All academic institutions are listed for identification purposes only*

**Sandro Galea, MD, DrPH**
Dean, Boston University School of Public Health

**Chris Beyrer MD, MPH**
Desmond M. Tutu Professor, Dept. of Epidemiology, Johns Hopkins Bloomberg School of Public Health

**Gavin Yamey, MD, MPH** Professor of the Practice of Global Health and Public Policy, Director, Center for Policy Impact in Global Health, Associate Director for Policy, Duke Global Health Institute

**Rachael Bedard, MD**

*Exhibit 2*

Senior Director, Geriatrics and Complex Care Services, Correctional Health Services

**Sarah Kimball, MD**
Co-Director, Immigrant & Refugee Health Center, Boston Medical Center

**Alan Shapiro, MD**
Senior Medical Director, Community Pediatric Programs and Assistant Clinical Professor of Pediatrics, Montefiore and Albert Einstein College of Medicine; Co-Founder and Medical Director, Terra Firma: Healthcare and Justice for Immigrant Children

**Ellen Lawton, JD**
Director, National Center for Medical-Legal Partnership, Milken Institute School of Public Health, George Washington University

**Steven Markowitz MD, DrPH**
Professor and Director, Barry Commoner Center for Health and the Environment, City University of New York

**Megan Murray, MD, ScD**
Professor of Global Health and Social Medicine, Harvard Medical School

**Ricky Bluthenthal, PhD**
Professor, Preventive Medicine, Institute for Health Promotion and Disease Prevention Research, Associate Dean for Social Justice, Keck School of Medicine, University of Southern California

**Charles Branas, PhD**
Professor of Epidemiology, Chair, Department of Epidemiology, Columbia University Mailman School of Public Health

**Scott A. Allen, MD**
Professor Emeritus, UC Riverside School of Medicine

**Beth Linas, PhD, MHS**
Infectious Disease Epidemiologist

**Alex H Kral, PhD**
Distinguished Fellow, RTI International

**Jeffrey Fagan, PhD.**
Sulzbacher Professor of Law and Professor of Epidemiology, Columbia University

**Wajdy L. Hailoo, MD, MSc, DIH, FCOEM, FCCP**
Professor, President, Med. Services of America

**Leo Beletsky, JD, MPH**

*Page 1 3 of 6*

*Exhibit 2*

Professor of Law and Health Sciences, Northeastern University; Associate Adjunct Professor, UCSD School of Medicine

**Kimberly Sue, MD, PhD**
Medical Director, Harm Reduction Coalition

**Steffanie Strathdee, PhD**
Associate Dean Global Health, Harold Simon Professor, UC San Diego

**Ellen Eaton, MD MSPH**
Assistant Professor, University of Alabama at Birmingham School of Medicine

**M. Barton Laws, PhD**
Associate Professor Health Service, Policy and Practice, Brown University School of Public Health

**Liz Tobin-Tyler, JD, MA**
Assistant Professor of Family Medicine and Health Services Policy and Practice, Brown University

**Brad Brockmann, JD, MDiv**
Assistant Professor of the Practice, Dept. of Health Services, Policy and Practice, Brown University School of Public Health

**Seth J. Prins, PhD, MPH**
Assistant Professor of Epidemiology and Sociomedical Sciences, Columbia University Mailman School of Public Health

**Kimberly Miller, PhD, MPH**
Assistant Professor of Preventive Medicine, Keck School of Medicine of the University of Southern California

**Tala Al-Rousan, MD, MPH**
Assistant Professor of Medicine, Division of Infectious Diseases and Global Public Health

**Morgan Philbin PhD MHS**
Assistant Professor, Columbia University Mailman School of Public Health

**Jennifer Toller Erausquin, PhD, MPH**
Assistant Professor of Public Health, UNC Greensboro

**Rebecca Shlafer, PhD, MPH**
Assistant Professor, University of Minnesota Medical School

**Sandra A. Springer , MD**

*Exhibit 2*

Associate Professor of Medicine, Yale School of Medicine, Department of Internal Medicine, Section of Infectious Disease

**Kinna Thakarar, DO MPH**
Assistant Professor of Medicine, Maine Medical Center

**Pia M. Mauro, PhD**
Assistant Professor of Epidemiology, Columbia University Mailman School of Public Health

**Rachel Hardeman PhD, MPH**
Assistant Professor of Health Services Research, University of Minnesota School of Public Health

**Matthew Murphy, MD, MPH**
Assistant Professor, Department of Medicine, Warren Alpert School of Medicine

**Lewis Pepper, MD, MPH**
Research Professor Retired, Queens College, City University of New York

**Mady Hornig, MA, MD**
Associate Professor of Epidemiology/Columbia University Mailman School of Public Health

**Susan Richman, MD, MSc**
Faculty, NYU School of Medicine

**Sarah Dalglish, PhD**
Associate, Johns Hopkins School of Public Health

**David Hoos, MD, MPH**
Senior Staff, Columbia University Mailman School of Public Health

**Alysse Wurcel MD**
Assistant Professor Tufts University School of Medicine, Infectious Diseases doctor in 6 MA jails

**Julia Marcus, PhD, MPH**
Assistant Professor, Department of Population Medicine, Harvard Medical School

**Andrea Low, MD, PhD**
Assistant Professor of Epidemiology, Columbia University Mailman School of Public Health

**Maureen Miller, PhD**
Senior Epidemiologist, Columbia University Mailman School of Public Health

**Kavita Rajasekhar, MD MPH**

Exhibit 2

Assistant Research Professor, Barry Commoner Center for Health and the Environment

**Elana Rosenthal, MD**
Assistant Professor, Infectious Disease Physician

*Exhibit 5*



**Centers for Disease Control and Prevention**
CDC 24/7: Saving Lives, Protecting People™

# Coronavirus Disease 2019 (COVID-19)

## People Who Are at Higher Risk for Severe Illness

COVID-19 is a new disease and there is limited information regarding risk factors for severe disease. Based on currently available information and clinical expertise, **older adults and people of any age who have serious underlying medical conditions** might be at higher risk for severe illness from COVID-19.

Based on what we know now, those at high-risk for severe illness from COVID-19 are:

- People 65 years and older
- People who live in a nursing home or long-term care facility

People of all ages with underlying medical conditions, particularly if not well controlled, including:

- People with chronic lung disease or moderate to severe asthma
- People who have serious heart conditions
- People who are immunocompromised
    - Many conditions can cause a person to be immunocompromised, including cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications
- People with severe obesity (body mass index [BMI] of 40 or higher)
- People with diabetes
- People with chronic kidney disease undergoing dialysis
- People with liver disease

 Older Adults

 People with Asthma

 At Risk For Severe Illness

 People with HIV

 People with Liver Disease

 People Who Are Immunocompromised

COVID-19: Are You at Higher Risk for Severe Illness?

*1 of 2*





*Exhibit 4*

**UNITED STATES GOVERNMENT**

# memorandum

**FEDERAL BUREAU OF PRISONS**
**Federal Correctional Complex**
**Coleman, Florida 33521**

July 31, 2020

MEMORANDUM FOR   INMATE POPULATION
FCC COLEMAN-MEDIUM

FROM:            J. M. Henger, Warden

SUBJECT:         National Observation COVID-19 – Update

As part of our response plan to the COVID-19 virus, the following operations will begin Monday, August 3, 2020. The goal is to continue to manage the evolving pandemic within the facility while taking proactive operational measures to mitigate exposure of COVID-19. We will need to continue to practice sound community measures and assimilate with the below restrictions to ensure the continued health and safety of the inmate population. We will continue to reevaluate and take recommendations from the CDC into consideration.

- Mainline – Inmates will continue to be provided meals delivered to each unit.
- UNICOR operations will continue to be suspended.
- Psychology, Religious Services, and Education staff will continue to make rounds in the units.
- Work details will be limited to a minimal number of inmates as needed by the work supervisor.
- Outside recreation has been suspended.
- Commissary and Laundry schedules remain posted on Trulincs.
- Health Services – Pill line and Sick Call sign up will be conducted in each unit.
- Unit Sanitation – As a reminder constant sanitation of the units is imperative.
- Access to showers will be given three times a week. The schedule is posted on Trulincs.
- Access to phones and computers will be given once a week by tier. Lower tier will be on Tuesday's and the upper tier on Thursday's, during the day shift hours.

*Exhibit 5*

**Bureau of Prisons**                    **\*\*SENSITIVE BUT UNCLASSIFIED\*\***

**Psychology Services**

**Inmate Companion Program - Administrative Note**

| Inmate Name: | JACKSON, KEVIOUS | | | | Reg #: | 17483-104 |
|---|---|---|---|---|---|---|
| Date of Birth: | 08/08/1977 | Sex: | M | Facility: COM | Unit Team: | B 3-4 |
| Date: | 05/08/2020 13:05 | Provider: | Benitez, P. PhD | | | |

**Comments**

Inmate Jackson, Kevious is currently a MH Companion in the Skills program. He has been in the Skills Program since 1-31-2019. He is a good role model to other inmates and implements the philosophy and methodology of the program on a daily basis. Inmate is respected by both staff and other inmates due to his pro-social values and respectful manner.

PROGRAM OVERVIEW
The Skills Program is a unit-based Mental Health Residential Treatment Program designed to improve the institutional adjustment of inmates who have intellectual and social deficiencies. Past trends have demonstrated that inmates with lower IQs, neurological deficits from acquired brain injuries, fetal alcohol syndrome, and/or remarkable social skill deficits have often become victimized and manipulated by more sophisticated inmates in the general population. As a result, they may be placed in the Special Housing Unit (SHU) for their protection or may have frequent misconduct reports because of their limited decision making skills.

The Skills Program employs a multi-disciplinary treatment approach aimed at teaching participants basic educational and social skills over a 16 month period. The goal of the program is to increase the academic achievement and adaptive behaviors of this special needs population, thereby improving their institutional adjustment and the likelihood for successful community reentry.

SKILLS PROGRAM MH Companions/Mentors are responsible for:
- Encouraging Participant's medication compliance
- Assisting Participants develop healthy personal and housing hygiene
- Assisting Participants with physical disabilities
- Knowing the Group Rules and the Skills Participant's Schedule
- Helping and encouraging the Skills Participant's to attend all assigned groups and classes
- Assisting and encouraging the Skills Participant's to complete all assignments, to include group workbook, treatment related homework and GED homework assignments
- Actively participating in the Community Morning Meeting, including facilitating the meeting
- Employing common courtesy and respect to both staff and inmates
- Maintaining treatment confidentiality
- Maintaining a "Willingness" to participate in the Skills Community Activities, Special Functions, and in the offering of Service and Topic Groups
- Demonstrating the desire to make positive changes not only within themselves, but to help facilitate positive growth within ALL members of the Skills Program Community
- Being a positive role model within the Skills Program and the institution

Inmate Jackson has been an asset to the Skills Program. He helps de-escalate situation between inmates that if not addressed could result in serious matters. Inmate has been dependable, compassionate and works well independently and/or as part of a team.

Completed by Benitez, P. PhD on 05/08/2020 13:08

*Exhibit 5*



**Bureau of Prisons**
**Psychology Services**
**Non-Residential DAP**

**SENSITIVE BUT UNCLASSIFIED**

| | | | | |
|---|---|---|---|---|
| **Inmate Name:** JACKSON, KEVIOUS | | | | **Reg #:** 17483-104 |
| **Date of Birth:** 08/08/1977 | **Sex:** M | | **Race:** BLACK | **Facility:** COM |
| **Open Date:** 04/18/2019 | **Closed Date:** 10/21/2019 | **Status:** Complete | | **Discussed:** Yes |

**PGI Title:** Overall Progress
**Status:** Complete          **Last Updated:** 08/28/2019    **Last Provider:** Manfra, L. MA/DTS

**Problem:** I have led a disordered lifestyle that has had a negative impact on many aspects of my life so I have volunteered to participate in this treatment program to help me address my specific problems.
**Goal:** Incorporate the principles and techniques of this treatment program to address my thinking errors and modify my problematic behaviors.
**Interventions:** Full program participation as directed and reviewed by my clinical team.

The group will meet weekly on Wednesdays from 830am to 1000am for six months.  I am committed to attend sessions regularly, complete journal assignments and participate in group discussion.

**Progress Notes:**

Understands concepts and demonstrates behavior(s)     **Date:** 08/28/2019   **Provider:** Manfra, L. MA/DTS
indicative of treatment progress
    Inmate demonstrates a positive attitude and participates in group discussion.

**PGI Title:** Substance Abuse
**Status:** Complete          **Last Updated:** 10/21/2019    **Last Provider:** Manfra, L. MA/DTS

**Problem:** I have a problem with abusing alcohol and cocaine.  This abuse affected my ability to make rational decisions, my personal life, my finances and my interaction with others.  I also engaged in risk-taking behaviors.
**Goal:** Lead a drug-free lifestyle, utilizing healthy coping mechanisms to manage unpleasant emotions and difficult situations by learning the concepts of rational self-analysis, camera-checks and recovery.
**Interventions:** TREATMENT ACTIVITY: I will explore the five stages of change, ten strategies for change and motivation for change by completing the workbook assignment in the Getting Started Journal pages 18-25.

TREATMENT ACTIVITY: I will write a readiness statement (Getting Started Journal pages 26-27), present to the group and accept feedback.

TREATMENT ACTIVITY: Develop assertive communication skills (Core Skills Journal pages 26-28).  Ask group members for feedback.  Use the RSA method to self-assess your communication skills.

TREATMENT ACTIVITY: Identify high-risk situations by developing strategies for dealing with the warning signs for relapse (Recovery Maintenance Journal pages 9-23).

TREATMENT ACTIVITY: Evaluate your substance use by looking at how your past substance use negatively affected your life (Getting Started Journal pages 1-17).

**Progress Notes:**

Understands concepts and demonstrates behavior(s)     **Date:** 10/21/2019   **Provider:** Manfra, L. MA/DTS
indicative of treatment progress
Understands concepts and demonstrates behavior(s)     **Date:** 08/28/2019   **Provider:** Manfra, L. MA/DTS
indicative of treatment progress

**Comments:**
    Inmate completed the group.


*Exhibit 0*

# Bureau of Prisons
# Psychology Services
# Group Participation

**SENSITIVE BUT UNCLASSIFIED**

| | | | | |
|---|---|---|---|---|
| **Inmate Name:** | JACKSON, KEVIOUS | | **Reg #:** | 17483-104 |
| **Date of Birth:** | 08/08/1977 | **Sex:** M | **Facilitator:** | (P)Manfra, L. MA/DTS |
| **Date:** | 04/24/2019 | **Group Facility:** COM | **Group Title:** | [1015] WESDESDAY MALE NON-RESIDENTIAL |

**Status:** Completed
**Enroll Date:** 04/24/2019   **End Date:** 10/02/2019
**Total Hours:** 28.0

## SESSION DATA:

**Number of Sessions:** 23    **First Session Date:** 04/24/2019    **Last Session Date:** 10/02/2019

| Date | Title | Duration | Attendance | Participation | Homework |
|---|---|---|---|---|---|
| 10/02/2019 | Session 21 | 60 | Incomplete Session | Good | Satisfactory |
| 09/25/2019 | Session 20 | 90 | Complete Session | Good | Satisfactory |
| 09/17/2019 | Session 19-Institutional Lockdown all week | 0 | Absent Excused | Not Apply | Not Apply |
| 09/11/2019 | Session 18 | 90 | Complete Session | Good | Satisfactory |
| 08/28/2019 | Session 17 | 90 | Complete Session | Good | Satisfactory |
| 08/21/2019 | Session 16 | 90 | Complete Session | Good | Satisfactory |
| 08/14/2019 | Session 15 | 90 | Complete Session | Good | Satisfactory |
| 08/07/2019 | No GRP this week/PST Activated and no staff available | 0 | Absent Excused | Not Apply | Not Apply |
| 08/02/2019 | Session 14 | 90 | Complete Session | Good | Satisfactory |
| 07/26/2019 | Session 13 | 0 | Absent Excused | Not Apply | Not Apply |
| 07/19/2019 | Session 12 | 90 | Complete Session | Good | Satisfactory |
| 07/10/2019 | Session 11 | 90 | Complete Session | Good | Satisfactory |
| 07/03/2019 | Session 10 | 90 | Complete Session | Good | Satisfactory |
| 06/26/2019 | Session 9 | 90 | Complete Session | Good | Satisfactory |
| 06/21/2019 | Session 8 | 90 | Complete Session | Good | Not Apply |
| 06/12/2019 | Session 7 | 90 | Complete Session | Good | Satisfactory |
| 06/06/2019 | Session 6 | 90 | Complete Session | Good | Satisfactory |
| 05/29/2019 | Session 5 | 90 | Complete Session | Good | Satisfactory |
| 05/22/2019 | Session 4 | 90 | Complete Session | Good | Satisfactory |
| 05/17/2019 | Session 3 | 90 | Complete Session | Good | Satisfactory |
| 05/08/2019 | Institutional Lockdown all week | 0 | Absent Excused | Not Apply | Not Apply |
| 05/01/2019 | Session 2 | 90 | Complete Session | Good | Satisfactory |
| 04/24/2019 | Session 1 | 90 | Complete Session | Good | Not Apply |

| Attendance | | Participation | | Homework | |
|---|---|---|---|---|---|
| Complete Session Present | 78.3 % | Good | 82.6 % | Not Apply | 26.1 % |
| Incomplete Session Excused | 4.3 % | Fair | 0.0 % | Satisfactory | 73.9 % |
| Incomplete Session Not Excused | 0.0 % | Poor | 0.0 % | Unsatisfactory | 0.0 % |
| Absent Excused | 17.4 % | Not Apply | 17.4 % | | |
| Absent Not Excused | 0.0 % | | | | |

*Exhibit 6*

**Non-Residential Clinical Treatment Team Note**        Date: 8/21/2019

Inmate Name:  Jackson                                            Reg #: 17483-104

Reason for Clinical Teaming:  Inmate Jackson attends group sessions consistently and his participation is adequate.  Inmate Jackson spoke several times with the inmate who committed suicide.

Content/Discussion:  Inmate Jackson stated he spoke with the inmate the day prior to his death.  Although he was not aware of his intentions, he could see he was 'struggling'.  Inmate Jackson displayed his sorrow and disbelief associated with the incident.  Additionally, this led him to share with the group the suicide of his nephew several years ago.

Interventions/Recommendations: Overall, it appears inmate Jackson is handling this event appropriately and was offered additional services should the need arise.  Furthermore, the group as a whole was offered the same, as it appeared other inmates knew who he was, but was not as forthcoming as inmate Jackson was in the group setting.

DAPC Signature: _____

DTS Signature: _____

DTS Signature: _____

# Bureau of Prisons
## Health Services
## Cosign/Review

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | JACKSON, KEVIOUS | | | Reg #: | 17483-104 |
| Date of Birth: | 08/08/1977 | Sex: | M | Race: | BLACK |
| Scanned Date: | 09/03/2019 19:43 EST | | | Facility: | COM |

**Reviewed with New Encounter Note by Li, Richard MD on 10/07/2019 11:00.**

Exhibit 6

*Exhibit 6*

08/03/2020

To whom it may concern,

Im Writing to you regarding Kevious Jackson, upon his release he will be staying at my residence located at 1213 SW Addie Port Saint Lucie FL 34983. I will be supporting him at this time. I work as and insurance coordinator for Icare Radiology  and I make $28,000 a year. Supporting Kevious Jackson will not be a financial burden on me until he is able to obtain employment . If you have any questions please feel free to contact me at (772)834-0178.

Thank you

Kimberley Bilins



Federal Bureau of Prisons
FCC Coleman
Certificate of Completion

This is to certify that

KEVIOUS JACKSON

satisfactorily completed

*BREAKING THE CYCLE*

as a part of

NON-RESIDENTIAL DRUG ABUSE TREATMENT

This certificate is hereby issued this 16th day of October 2019.

L. Manfra, M.A. Drug Treatment Specialist

EXHIBIT 8

# Certificate of Completion

Presented to

**KEVIOUS JACKSON**

For successfully completing the

**Drug Abuse Education Course**

The Drug Abuse Education Course is a minimum of 12 hours. The goal of this program is to help the offender to make an accurate evaluation of the consequences of his/her alcohol/drug use and consider the need for treatment.

L. Manfra, MA, DTS    3/4/2019

FCC Coleman    Institution



*Certificate of Achievement*

Awarded to:

**KEVIOUS JACKSON**

For the successful completion of the

*Bridge to Re-Entry*

Through the A-2 Re-Entry Program at Coleman Medium

T. Collier/ Re-Entry Program Manager

This 15th day of July, 2019

EXHIBIT 8

# Philippi Freedom Ministry
## Certificate of Completion

THIS ACKNOWLEDGES THAT

# Kevious Jackson

HAS SUCCESSFULLY COMPLETED
BIBLE BASIC BOOK #1 – "WHO LOVES YOU"

MAY 22, 2019

TIMOTHY D. HUNT



# Philippi Freedom Ministry
## Certificate of Completion

THIS ACKNOWLEDGES THAT

# Kevious Jackson

HAS SUCCESSFULLY COMPLETED
BIBLE BASIC BOOK #2 – "GOD EXISTS"

JUNE 14, 2019

GARY WATSON – PRESIDENT

# Philippi Freedom Ministry
## Certificate of Completion

THIS ACKNOWLEDGES THAT

# Kevious Jackson

HAS SUCCESSFULLY COMPLETED
BIBLE STUDY BOOK #3 – "SAFE TO DIE"

JULY 24, 2019

GARY WATSON, PRESIDENT

EXHIBIT
7

Before completing this application, please review Program Statement 5050.50, Compassionate Release/Reduction in Sentence (RIS), available in the law library.

## REDUCTION IN SENTENCE APPLICATION

**NAME:** Kevious Jackson **Unit:** A1 **REG No.** 17483-104 **Date:** 5-1-2020

**WHO IS YOUR PHYSICIAN (circle):** Franco ⬭(Li) Bonnet-Engebretson Venuto

## Choose One Criteria: You can only apply under one criteria.

**Extraordinary/Compelling Circumstances:**

☑ Medical Circumstances:
- ☐ Terminal Medical Condition – Terminal Diagnosis with 18 months or less life expectancy.
- ☐ Debilitated Medical Condition – Illness that has you partially (50%) or completely (100%) disabled.

☐ Elderly Inmates with a Medical Condition:
- ☐ "New Law" Elderly Inmates – Have to have served 30 years of a sentence.
- ☐ Elderly with Medical Conditions – 65 yrs. old or older, a deteriorating medical condition, served 50% of your sentence.

☐ Elderly Inmates without a Medical Condition: - 65 yrs. old or older, Served 10 yrs. or 75% of your sentence (which is greater)

☐ Death or Incapacitation of the Family Member Caregiver of an inmate's dependent child: -provide verifiable documentation the child is "suddenly" without a caretaker, the family member is in an incapacitated state and is unable to care for the child.

☐ Incapacitation of a Spouse or Registered Partner: -Provide verifiable medical documentation of incapacitated state.

☐ Other:-Extraordinary and Compelling Circumstance

---

## To be filled out by Inmate:

Briefly describe your medical condition or extraordinary and compelling circumstance:

I have Hypertension, asthma and high cholesterol. And other issues with my stomach.

If you have applied before, has anything changed in your medical condition since your last application? Never applied

Proposed Release Plan (**must have ALL of the following**):

Name and contact information of who you will live with: Kim Bilins (772)-834-0178

When was the last time you spoke to this person concerning your release plan? April 22 on 24

Is this person willing to care for you? Yes

Address of where you will be living: 1213 S.W. Addie St. Port St. Lucie, Fla. 34983

Where will you receive your medical treatment (if applicable)? Port St. Lucie, Fla

How will you pay for your treatment (if applicable)? ~~Medical card~~ cash + ~~medical~~ INSURANCE

Additional Comments: Though people of all ages are affected by Covid 19, many of those who develop severe complications have preexisting medical conditions. Hypertension is the higher risk of all. I would truly like to thank you for your time and consideration.

Rev 4/20

Page 1 of 9



EXHIBIT **6**
7

## Response to Inmate Request to Staff

Inmate: JACKSON, Kevious
Register Number: 17483-104
Institution / Housing Unit: COM / A-1 Skills

You requested a reduction in sentence (RIS) based on concerns about COVID-19.
After careful consideration, your request is denied.

Title 18 of the United States Code, section 3582(c)(1)(A), allows a sentencing court, on
motion of the Director of the BOP, to reduce a term of imprisonment for extraordinary or
compelling reasons. BOP Program Statement No. 5050.50, Compassionate
Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§
3582(c)(1)(A) and 4205(g), provides guidance on the types of circumstances that
present extraordinary or compelling reasons, such as the inmate's terminal medical
condition; debilitated medical condition; status as a "new law" elderly inmate, an elderly
inmate with medical conditions, or an "other elderly inmate"; the death or incapacitation
of the family member caregiver of the inmate's child; or the incapacitation of the
inmate's spouse or registered partner. Your request has been evaluated consistent with
this general guidance.

The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat
any affected inmates. We recognize that you, like all of us, have legitimate concerns
and fears about the spread and effects of the virus. However, your concern about being
potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an
early release from your sentence. Accordingly, your RIS request is denied at this time.

If you are not satisfied with this response to your request, you may commence an
appeal of this decision via the administrative remedy process by submitting your
concerns on the appropriate form (BP-9) within 20 days of the receipt of this response.

C. M. Rijos, Acting Warden                                    Date 3/4/20

*Kevious Jackson 17883-104*

Page 2 of 9

**U.S. DEPARTMENT OF JUSTICE** EXHIBIT 7

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: JACKSON   Nevious  D        17483-104        A1        ColeMAN Mc
    LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.      UNIT      INSTITUTION

**Part A– INMATE REQUEST**

I would like to appeal my reduction of sentence
concerning about Covid-19.

5-12-2020
DATE

*Nevious Jackson*
SIGNATURE OF REQUESTER

**Part B– RESPONSE**

Exhibit 7

DATE

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**

CASE NUMBER: _____

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____

    LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.      UNIT      INSTITUTION

SUBJECT: _____ PAGE 3 of 9

Exhibit 7

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: __Jackson   Mevious  D__   __17483-104__   __A1__   __Coleman__
　　　LAST NAME, FIRST, MIDDLE INITIAL　　REG. NO.　　　UNIT　　INSTITUTION

**Part A– INMATE REQUEST**

On May 1, 2020 I filled out a reduction of sentencing (RIS) for compassionate release do to I am a high risk for contactin Covid-19. My medical conditions are hypertension, asthma and high Cholesterol. On May 4, 2020 I was denied the reduction of sentencing by Acting Warden C.M. Rijos. I'm asking for a reconsideration do to my health, the growing numbers of infection and death in the (BOP).

__May 20, 2020__　　　　　　　　　　__Mevious Jackson__
　　　DATE　　　　　　　　　　　　　SIGNATURE OF REQUESTER

**Part B– RESPONSE**

Exhibit 7

_____　　　　　　_____
　　　DATE　　　　　　　　　　　　WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE　　　　　CASE NUMBER: _____

　　　　　　　　　　　　　　　　　　CASE NUMBER: _____

**Part C– RECEIPT**　　　Page 4 of 9

Return to: _____　_____　_____
　　　LAST NAME, FIRST, MIDDLE INITIAL　D.　REG. NO.

SUBJECT: _____

*Exhibit *
*7*

**Response to Request for Administrative Remedy Case Number: 1021924-F1**

This is in response to your Request for Administrative Remedy dated on
May 26, 2020, in which you are requesting reconsideration for early release.

An investigation into this matter reveals on Title 18 of the United States Code, section
3582(c)(1)(A), allows a sentencing court, on motion of the Director of the BOP, to
reduce a term of imprisonment for extraordinary or compelling _reasons. BOP Program
Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures
for Implementation of 18 U.S.C. §§ 3582(c)(1 )(A) and 4205(g), provides guidance on
the types of circumstances present extraordinary or compelling reasons, such as the
inmate's terminal medical condition; debilitated medical condition; status as a "new law"
elderly inmate, an elderly inmate with medical conditions, or an "other elderly inmate";
the death or incapacitation of the family member caregiver of the inmate's child; or the
incapacitation of the inmate's spouse or registered partner. In which the request has
been evaluated consistent with this general guidance.

The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat
any affected inmates. Your concerns of being potentially exposed to, or possibly
contracting, COVID-19, does not currently warrant an early release from your sentence.
Accordingly, your RIS request is denied at this time.

**Accordingly, your Request for Administrative Remedy is Denied.**

If you are dissatisfied with this response, you may appeal by filing a BP-10, to the
Bureau of Prisons, Southeast Regional Office, Attn: Regional Director, Building 2000,
3800 North Camp Creek Parkway SW, Atlanta, GA 30331-5099, within 20 calendar
days from the date of this response.

_____          _____5-28-20_____
J. M. Kenger, Warden                              **Date**

*Page 5 of 9*

Exhibit 7.



Exhibit 7

Bureau of Prison. Southeast Regional
Attn: Regional Director. Building 2000
3800 North Camp Creek Parkway SW.
Atlanta GA. 30331-5099

Previous Jackson 17483-104
Federal Correctional Complex
P.O. Box 1032
Coleman, Fla. 33521

Page 6 of 9

Federal Bureau of Prisons

Type or use ball-point pen.. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be su[]
with this appeal.

From: _Jackson  Kevious  D_  _17488-104_  _A1_  _ColeMAN_
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A—REASON FOR APPEAL**

On MAy 1, 2020 I filled out the Reduction in Sentence foam.
do to my Medical condition. I have Hypentension, Asthma
And High Cholestenol. I have senved oven half of my Remain
SenteNce. My schedule Release date is Apnil, 10, 2020. on May 4
my (RIS) foam was denied by then Acting Wandon C. M. Rijos. I
Appealed hen denial on May 12 and still haven.t Received A
Reply. I'm asking to be consideRed foR home confinement to
kim Dilins 1213 S.W. Addie St Pont St. Lucie, Fla. 34983
(772) 834-0178. On May 20th I filed Again and still no Respons[]

_6-12-2020_          _Kevious Jackson_
DATE                          SIGNATURE OF REQUESTER

**Part B—RESPONSE**

Exhibit 7

7

_____          _____
DATE                                REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar
days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

**Part C—RECEIPT**          Page 1 of 9          CASE NUMBER: _____

Return to: _____          _____          _____          _____
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____          ⊕          _____
USP LVN    DATE    Previous editions not usable          SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)
APRIL 1[]

*Exhibit 1*
7



Central Office
Federal Bureau of Prisons
320 First Street N.W.
Washington, D.C. 20534

Kevious Jackson 17483-104
Federal Correctional Complex
P.O. Box 1032
Coleman, Fla. 33521

Page 8 of 9

**U.S. Department of Justice**

**Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP–DIR–9 and BP–DIR–10, including any ments must be submitted with this appeal.

From: _Jackson Nevious D_ _17483-104_ _C3_ _Coleman_
  LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A—REASON FOR APPEAL** ON JUNE 12, 2020 I Appealed My (P.I.S) Compassionate Release do to the CDC plan I AM A high Ris for ~~~~ sevene illness if I contact Covid-19. I have Asthma, Hypertension And High Cholesterol. I submitted A (DP 10) to the Regional Office ON JUNE 12, 2020, ~~~~ And After waiting 30 calendan days I haven't received A respond. There is several case's of Covid-19 here at ColemanFC. I. The Medication I Rec will Not protect me from Covid-19. Please have me sent home to home confinement to him Bilins 1213 S.W. Addie St. Port St. Lucie, Fla.

_7-19-2020_   # 772-834-0178   _Nevious Jackson_
  DATE                             SIGNATURE OF REQUESTER

**Part B—RESPONSE**

Exhibit
7

_____          _____
         DATE                              GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE          CASE NUMBER: _____

**Part C—RECEIPT**          CASE NUMBER: _____

Page 9 of 9

Return to: _____
         LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

         DATE



Tampa/St Pete FL 336
MON 24 AUG 2020

YhoVIoUS JACKSON 17493-104
FedeRAl CoRRectioNAl Complex
ColeMAN MeDium
P.O. Box 1032
ColeMAN, FlA. 33521

United StAtes District Cou.
SouthcRN District of FloRic
Office of the CleRk
701 ClemAtis StReet, Room
West PAlm BeAch, FlA. 33

Legal MAil